William E. GOLDSTANDT and William
E. Henner, Individually and d/b/a II
Williams, Plaintiffs-Appellants,

v.

BEAR, STEARNS & CO., and Norman
Turkish, Defendants-Appellees.

No. 75–1070.

United States Court of Appeals,
Seventh Circuit.

Argued May 23, 1975.

Decided Aug. 29, 1975.

Sheldon I. Saitlin, Chicago, Ill., for plaintiffs-appellants.

Irving H. Goldberg, Joan M. Hall, Lionel G. Gross, Chicago, Ill., for defendants-appellees.

Before SWYGERT and SPRECHER, Circuit Judges, and EAST, Senior District Judge.*

SWYGERT, Circuit Judge.

The main question in this appeal is whether sufficient facts relating to plaintiffs' right to invoke the equitable tolling doctrine were alleged in the complaint to preclude the granting of defendants' motion to dismiss.

According to the allegations of the complaint, plaintiffs-appellants William E. Goldstandt and William E. Henner were partners in II Williams, a general partnership. II Williams was a broker-dealer registered with the Securities and Exchange Commission and a member of the National Association of Securities Dealers, but was never a member of any securities exchange registered pursuant to Section 6 of the Securities and Exchange Act of 1934. Defendant-appellee Bear, Stearns & Co., a Limited Partnership, was a broker and dealer conducting a retail securities business. Defendant-appellee Norman Turkish was a limited partner of Bear, Stearns & Co.

Since 1957 II Williams had provided services for Bear, Stearns on the floor of the Chicago Mercantile Exchange. In late 1967 Turkish suggested a method by which II Williams could earn profits by becoming a customer of Bear, Stearns for the purpose of engaging in a series of "short sales" which would be "covered" by securities which were the subject of pending registration statements at the Securities and Exchange Commission. On several occasions Henner and Goldstandt asked Turkish whether this arrangement was legal and were informed that Turkish had checked with the legal department of Bear, Stearns and that the practice was "proper." Between January 23, 1968 and late 1970 II Williams was involved in thirty trades employing this practice.

In June 1971 II Williams was served with a complaint of the National Association of Securities Dealers alleging, along with other claimed violations, a violation of the Rules of Fair Practice in connection with the above practice. Goldstandt telephoned Turkish who in-

* Senior District Judge William G. East of the District of Oregon is sitting by designation.

formed Goldstandt that the procedure was not legal and that Turkish at all times knew of this fact. On August 2, 1973, after a hearing, the National Association of Securities Dealers fined II Williams $100,000, expelled it from membership, and determined that the individual plaintiffs would never be permitted to associate with any member of the association.

The four-count complaint seeks damages from defendants on the grounds that their actions violated Section 10(b) of the Securities Act of 1934, 15 U.S.C. § 78j(b), Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b.5 and Section 17 of the Securities Act of 1933, 15 U.S.C. § 77a; constituted common law fraud; violated Rule 405 of the New York Stock Exchange, Inc., General Rules; and violated Section 1 of Article III of the Rules of Fair Practice of the National Association of Securities Dealers. Defendants filed a motion to dismiss on various grounds, including that the action was barred by the statute of limitations. The district court found that on the face of the complaint the three claims not based on common law fraud were outside the applicable statute of limitations. The court held that the equitable tolling doctrine of fraudulent concealment was not available since there were not sufficient allegations that plaintiffs had exercised due diligence to discover the fraud in light of the facts that "they were suspicious of the transactions" and "were not unsophisticated investors." Accordingly these three counts were dismissed as being untimely and the pendent jurisdiction common law fraud count was dismissed for lack of subject matter jurisdiction.

1. Plaintiffs are also claiming damages for losses suffered on certain individual transactions involved in some of the thirty trades.

2. Our case is different from the situation in which a general statute of limitations is not deemed to be applicable to an action by a plaintiff who could not have "discovered" the defect or negligence until he suffered damage, although even in that type of case the accrual date is not always the "discovery" date especially in the context of commercial transactions. *See generally Gates Rubber Co. v. USM*

## I

The initial question we must consider is whether plaintiffs' claims are on their face barred by the applicable statute of limitations. This issue was not originally briefed, but at oral argument we asked why the cause of action should not be deemed to accrue at the point at which the National Association of Securities Dealers took the action that is the main basis of plaintiffs' claim of damages.[1] (We have since received supplemental briefs addressed to this point.)

■ It is clear that the applicable statute of limitations in this case is the three-year provision of Ill.Rev.Stat. Ch. 121½ § 137.13, subd. D. *Parrent v. Midwest Rug Mills, Inc.*, 455 F.2d 123 (7th Cir. 1972). The language of this statute is plain:

No action shall be brought for relief under this Section or upon or because of any of the matters for which relief is granted by this Section after 3 years from the date of sale.

It is admitted that this action was not brought until more than three years after the last sale involved was consummated, even though some of the claimed damages were losses on the sales and had nothing to do with the National Association of Securities Dealers' action. In regard to the instant case, Section 137.13, subd. D itself indicates when the cause of action "accrued." The complaint was not filed within three years of that accrual date and thus is barred by the statute of limitations unless an exception can be invoked.[2]

*Corp.*, 508 F.2d 603 (7th Cir. 1975). The problem in those cases was not merely that the full extent of the damage was unknown, but that the existence of the wrongful act itself was not previously evident. In the instant case the only reason that the plaintiffs could not have known of the "wrong" itself until the action by the National Association of Securities Dealers is if it was fraudulently concealed, in which case there would be a tolling of the statute provided due diligence had been exercised.

## II

The exception that plaintiffs seek to rely upon is the equitable doctrine of fraudulent concealment. The parameters of this doctrine were recently discussed in *Tomera v. Galt,* 511 F.2d 504, 510 (7th Cir. 1975):

At least two types of fraudulent behavior toll a statutory period. *Bailey v. Glover,* 21 Wall. 342, 22 L.Ed. 636 (1875). In the first type, the most common, the fraud goes undiscovered even though the defendant after commission of the wrong does nothing to conceal it and the plaintiff has diligently inquired into its circumstances. The plaintiffs' due diligence is essential here. *Morgan v. Koch,* 419 F.2d 993 (7th Cir. 1969); Developments in the Law—Statutes of Limitation, 63 Harv.L.Rev. 1177 (1950). In the second type, the fraud goes undiscovered because the defendant has taken positive steps after commission of the fraud to keep it concealed. . . . This type of fraudulent concealment tolls the limitations period until actual discovery by the plaintiff. The court in *Smith v. Blachley,* 198 Pa. 173, 47 A. 985 (1901), aptly stated:

The cases which hold that, where fraud is concealed, or, as sometimes added, conceals itself, the statute runs only from discovery, practically repeals the statute pro tanto. Fraud is always concealed. If it was not no fraud would ever succeed. But, when it is accomplished and ended, the rights of the parties are fixed. The right of action is complete. If the plaintiff bestirs himself to inquire, he has ample time to investigate and bring his action. If both parties rest on their oars, the statute runs its regular course. But, if the wrongdoer adds to his original fraud affirmative efforts to divert or mislead or prevent discovery, then he gives to his original act a continuing character, by virtue of which he deprives it of the protection of the statute until discovery.

*Id.* at 987.

◾ Plaintiffs' complaint alleges no affirmative concealment by the defendants. Thus, their fraudulent concealment claim is of the first type mentioned in *Tomera v. Galt* and due diligence on the plaintiffs' part is an essential element. The plaintiffs must have "exercised reasonable care and diligence in seeking to learn the facts which would disclose fraud." *Morgan v. Koch,* 419 F.2d 993, 997 (7th Cir. 1969).

The crucial question is what constituted due diligence in the factual context of this case. Reading the complaint in the light most favorable to the plaintiffs we find that their contention must be that in the absence of any occurrence that should have made them suspicious about Turkish's assertions they had no duty to seek an independent legal opinion until they received the complaint issued by the National Association of Securities Dealers. They argue that if they reasonably relied on Turkish's fraudulent representation in the first instance they could not later be expected to seek a different legal opinion just because the statute of limitations was running. According to this argument the fraud was a continuing one in the sense that no reasonable person, once so defrauded, would have sought other legal advice in the absence of an intervening event.

◾ The defendants' response is that the complaint did not even have a general allegation that plaintiffs had exercised due diligence in regard to the discovery of the fraud. In this particular case we think such a conclusory allegation was unnecessary. Given plaintiffs' theory of due diligence, the only thing that they could have alleged is that nothing came to their attention which would have caused a reasonable man to investigate and discover the fraudulent activity.[3]

---

3. If something did occur that should have reasonably aroused plaintiffs' suspicions then this case would be similar to *Hupp v. Gray,* 500 F.2d 993 (7th Cir. 1974), and the equitable tolling doctrine would definitely not be applicable.

We do not think it was incumbent upon them to plead the existence of such "negative" facts.

The question is whether plaintiffs had any affirmative duty since the fraud could have been discovered had plaintiffs sought an independent opinion on the legality issue. Plaintiffs claim that the answer depends on the particular facts of the relationship between the seller and buyer and the parties' sophistication. They argue that such factual matters cannot be determined upon a motion to dismiss and that there was no basis for the district court's determination that plaintiffs were sophisticated in terms of the *securities* market. It is clear from the complaint, however, that plaintiffs were professional market traders who surely had ready access to legal advice and the advice of the National Association of Securities Dealers.

Moreover the crux of the alleged fraudulent misrepresentation does relate to a legal opinion, for despite the plaintiffs' contention that Turkish deceived them concerning his checking with the legal department, it was the legal opinion of Bear, Stearns that plaintiffs relied upon and not just the fact that there had been a legal opinion. This is an important factor because a fraudulent legal opinion involves no facts that are not known to all. Plaintiffs clearly knew all the relevant facts in regard to the alleged fraud. It was only the legal significance of these facts that was unknown to plaintiffs. They argue that they should not be penalized for such ignorance when it was defendants who fraudulently represented a false legal significance.

■ ■ Regardless of whether a timely 10b–5 claim could be brought on these facts, we believe there was an affirmative duty required of plaintiffs in terms of an equitable tolling claim. Normally a statute of limitations is not tolled merely because a potential plaintiff had been ignorant of the law; the policy behind a statute of limitations would require that he seek legal advice. An untimely claim will be barred even if the potential plaintiff did not realize that he had some type of legal cause of action. The same is true here. Due diligence relating to discovery of the fraudulent misrepresentation required the plaintiffs to obtain independent advice on the legality issue so that they could determine if they had been defrauded. Plaintiffs claim that there was no event to trigger such an inquiry. But "[i]t is well established that a plaintiff may not merely rely on his own unawareness of the facts or law to toll the statute." *Hupp v. Gray,* 500 F.2d 993, 996 (7th Cir. 1974). Plaintiffs were obligated to "bestir themselves to inquire" especially since this would have been relatively easy for them.

■ Even if certain investors can rely upon large brokerage houses for legal advice and sue under 10b–5 if such advice is fraudulently given, they cannot necessarily continue to so rely until they find out otherwise and still bring suit years after the statute of limitations has run. Different policy considerations are involved. In the investor-fraud situation there is a congressional intention to prevent all fraudulent misrepresentations involving the sale of stock. This might well include fraudulent legal opinions. But there is also an intention to limit the time in which suits based on such fraud can be brought. If the only concern was preventing fraud we might always allow such suits no matter when they are filed. But fairness requires a cut-off point and an exception is made to the cut-off point only when a plaintiff, due to defendant's fraudulent concealment, could not have known that a wrong occurred. Here, the plaintiffs could have known. Their failure to act upon the facts known to them resulted in their suit being time barred.

The order of dismissal is affirmed.