**ALABAMA BANCORPORATION, a corporation, and the First National Bank of Birmingham, a national banking association, Plaintiffs,**

v.

**John C. HENLEY, III, and Birmingham Trust National Bank, as Trustees of Linn-Henley Charitable Trust, et al., Defendants.**

Civ. A. No. CA–77–L–1530–S.

United States District Court,
N. D. Alabama, S. D.

Feb. 21, 1979.

L. Murray Alley and George F. Maynard of Cabaniss, Johnston, Gardner, Dumas & O'Neal, Birmingham, Ala., for plaintiffs, Alabama Bancorporation, a corporation, and The First Nat. Bank of Birmingham, a National Banking Ass'n.

Jim O'Kelley, Asst. Atty. Gen., Montgomery, Ala., for William J. Baxley, Atty. Gen. of the State of Alabama, Montgomery, Ala., as the ad litem representative of the unnamed beneficiaries of the Linn-Henley Charitable Trust.

Lee C. Bradley, Jr., and Macbeth Wagnon, Jr. of Bradley, Arant, Rose & White, Birmingham, Ala., for defendant, Birmingham Trust Nat. Bank.

James W. May of Odom, May & Debuys, Birmingham, Ala., and by Daniel M. Markstein, III, and Curtis O. Liles, III of Markstein & Morris, Birmingham, Ala., for defendant, John C. Henley, III.

## MEMORANDUM OPINION

LYNNE, District Judge.

Plaintiff, Alabama Bancorporation ("Bancorporation"), is a Delaware corporation and holding company which owns all the capital stock (except for directors' qualifying shares) of plaintiff The First National Bank of Birmingham ("FNB"), a national banking association, and fourteen other banks located in Alabama. Defendants John C. Henley, III ("Henley") and Birmingham Trust National Bank ("BTNB"), a national banking association, are co-trustees of the Linn-Henley Charitable Trust (the "Trust").

For many years the Trust had owned a substantial number of shares of the common capital stock of The First National Bank of Birmingham, a predecessor of one of the plaintiffs in this action. By a reorganization in late 1971 and early 1972, hereinafter outlined, The First National Bank became a wholly-owned subsidiary of Bancorporation and the Trust became a stockholder of Bancorporation. On November 10, 1977 counsel for plaintiffs received a demand letter from counsel for Henley (acting in his capacity as trustee), insisting that Bancorporation provide the Trust with FNB shares in lieu of the Trust's Bancorporation stock. The letter demanded an amount of FNB shares equivalent to the Trust's holding of FNB shares on the date that FNB became a wholly-owned subsidiary of Bancorporation; and it clearly implied that litigation would follow in the event the plaintiffs failed to accede to the demand.

Plaintiffs declined to yield thereto, and on November 23, 1977 initiated this suit, seeking a declaration,[1] *inter alia*, (1) that the defendants are not entitled to any FNB shares and (2) that any claim by the defendants to FNB shares is barred by the applicable statute of limitations and laches.

Henley's answer to the complaint denied that plaintiffs' merger and reorganization, pursuant to which the Trust exchanged shares in FNB's predecessor for Bancorporation shares, had been effected in accordance with § 215a of the National Bank Act[2]; that the reorganization constituted a fraud, and claimed that the Trust was entitled to FNB shares instead of Bancorporation stock. Several months later, Henley filed an amended answer setting forth two specific counterclaims alleging (1) violations of the proxy fraud provision[3] of the Securities and Exchange Act of 1934[4] (the "1934 Securities Act") and the Alabama Blue Sky statute's[5] general fraud provisions[6] and (2) contravention of the provisions of the National Bank Act, relating to directors' qualifying shares.[7] However, Henley has since conceded that the statute of limitations has run against any claim he may have under the Alabama Blue Sky statute, and has further conceded that he lacks standing to assert any claim respecting directors' qualifying shares.[8] Thus, Henley now relies only on Federal Security Act claims as the basis for seeking rescission or damages against the plaintiffs. Although Henley has asked BTNB to join in his counterclaim, BTNB has declined to make any demand on or claim against the plaintiffs, and was permitted by the Court to withdraw from defense of the declaratory action.

---

1. Pursuant to a motion made by defendant Henley, the Court named William J. Baxley, as Attorney General of the State of Alabama, as representative *ad litem* of the unnamed beneficiaries of this charitable trust.

    Plaintiffs seek a declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201. The Court has subject matter jurisdiction of this case pursuant to 28 U.S.C. §§ 1331 and 1337, and 15 U.S.C. § 78aa. Neither personal jurisdiction nor venue has been contested by any party.

2. 12 U.S.C. § 21 *et seq.*

3. 15 U.S.C. § 78n, as implemented by regulation SEC rule 14a–9, 15 C.F.R. § 240.14a–9.

4. 15 U.S.C. § 78a *et seq.*

5. Securities Act of Alabama, § 8–6–1 *et seq., Code of Alabama* (1975).

6. §§ 8–6–17, 19, *Code of Alabama* (1975).

7. 12 U.S.C. §§ 71, 72.

8. Henley memorandum in opposition to plaintiffs' motion for summary judgment.

The essential facts regarding the reorganization which was accomplished in 1972 and is at the heart of Henley's claims are not disputed. In the initial step of the reorganization, management of Old FNB caused plaintiff Bancorporation to be organized under the laws of the State of Delaware. Bancorporation then obtained a charter from the Comptroller of the Currency for a new national bank, Jefferson County National Bank (the "New Bank"), which was organized and chartered to do business at the same location as Old FNB. All of the capital stock of the New Bank (except directors' qualifying shares) was owned by Bancorporation.[9]

Purporting to proceed under the authority of a reorganization provision of the National Bank Act, § 215a, *supra*, and in accordance with a plan to be approved by the requisite majority of the shareholders of Old FNB and the New Bank, the two banks would be merged under the charter of the New Bank; and the shareholders of Old FNB would receive shares of Bancorporation in exchange for their Old FNB shares. The name of the continuing bank would be changed to The First National Bank of Birmingham. Old FNB shareholders dissenting from the proposed merger and exercising their appraisal rights and the valuation procedure provided by § 215a, *supra*, would receive a cash payment in lieu of the Bancorporation stock to which they were entitled under the merger agreement. The entire procedure was disclosed to shareholders in a proxy statement issued by Old FNB on December 3, 1971 and received by defendants shortly thereafter.

The requisite number of shares of Old FNB were voted in favor of the reorganization at a shareholders meeting on December 22, 1971 and, after obtaining the required regulatory approvals, the reorganization was consummated as outlined.

The defendants did not dissent from the merger nor attempt to exercise their right to an appraisal; instead, they accepted the shares of Bancorporation to which the Trust was entitled under the merger agreement on or about March 7, 1972. No complaint or demand was received by Bancorporation or FNB from the defendants regarding their status as shareholders or with respect to the reorganization consummated in early 1972 until Henley's demand was made in November of 1977.

The gravamen of Henley's Security Act claim is that the proxy statement provided to the Old FNB shareholders failed fully to apprise Henley and the Trust of the range of options afforded bank shareholders under § 215a, *supra*. Henley alleges (and plaintiffs do not contest) that the proxy statement indicated that upon approval of the reorganization plan, shareholders had the choice of (1) exchanging their shares of Old FNB for shares in Bancorporation, a holding company; or (2) dissenting from the reorganization and receiving cash in lieu of their stock. Henley advances the theory that § 215a, *supra*, authorizes only the merger of banks and the exchange of the stock of the surviving bank for previously held bank stock and that consequently a third option was available: exchange shares of Old FNB for shares of FNB, the continuing entity which survived the merger of the New Bank and the Old Bank. Simply stated, Henley's Security Act claim is that Old FNB failed to disclose in its proxy statement that this third alleged option was available.

Plaintiffs have denied that Henley's construction of the National Bank Act is correct, contending that its reorganization was fully authorized and properly executed and that therefore no violation of federal securities laws occurred. At the same time plaintiffs assert that if any such cause of action be assumed, it is barred by the statute of limitations. Because the statute of limitations defense would be dispositive of the other issues, the Court, with the concurrence of all counsel, severed this issue for initial determination. A trial of this issue

9. Bancorporation requested and received approval from the Board of Governors of the Federal Reserve System to become a bank holding company pursuant to the Bank Holding Company Act, 12 U.S.C. § 1842(a)(1).

was held by this Court, sitting without a jury, on December 19, 1978. The Court has considered the evidence adduced, including a substantial number of exhibits, the oral arguments of counsel and the briefs submitted both before and after the trial and has concluded that Henley's claims are barred by the statute of limitations. The Court embodies its findings of fact and conclusions of law in the form of a Memorandum Opinion, as authorized by Rule 52(a), FRCP.

■ The 1934 Securities Act, 15 U.S.C. § 78a *et seq.*, has no statute of limitations for application to civil fraud actions brought under § 78n thereof and the proxy rules [10] promulgated thereunder. Consequently, federal courts apply the statute of limitations of the forum state to a fraud action brought under the 1934 Securities Act. *Bailes v. Colonial Press, Inc.*, 444 F.2d 1241 (5th Cir. 1971). *See North Co. v. Krock*, CCH Fed.Sec.L.Rep. ¶ 92,295 (S.D.N.Y.1968).

■ The Fifth Circuit has held, and the parties agree, that the appropriate statute of limitations for a fraud action under the 1934 Act in Alabama is the general one-year statute of limitations for fraud, § 6–2–39, *Code of Alabama* (1975). *Hooper v. Mountain States Securities Corp.*, 282 F.2d 195 (5th Cir. 1960); *Bailes v. Colonial Press, Inc., supra.* Although a state statute of limitations is borrowed, "[i]n determining when the clock starts running for the purpose of applying a borrowed statute of limitations to a federally created remedy, federal, not state, law is controlling." *Azalea Meats, Inc. v. Muscat*, 386 F.2d 5, 8 (5th Cir. 1967). Thus, federal law determines the date of accrual of the cause of action.

■ Federal courts have long recognized that in a federal action for fraud, the limitations period is tolled "where the party injured by the fraud remains in ignorance of it without any fault or want of diligence or care on his part . . . until the fraud is discovered, though there be no special circumstances or efforts on the part of the party committing the fraud to conceal it from the knowledge of the other party." *Bailey v. Glover*, 88 U.S. (21 Wall.) 342, 348, 22 L.Ed. 636 (1874). *See Holmberg v. Armbrecht*, 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743 (1946). However, the party seeking the shelter of the federal tolling doctrine "has the burden of showing that he exercised reasonable care and diligence in seeking to learn the facts which would disclose the fraud. . . ." *Hupp v. Gray*, 500 F.2d 993, 996 (7th Cir. 1974). The time from which the statute of limitations begins to run is not the time at which the complainant becomes aware of all of the various aspects of the alleged fraud, but rather the statute runs from the time at which the complainant should have discovered the general fraudulent scheme. *Berry Petroleum Co. v. Adams & Peck*, 518 F.2d 402, 410 (2d Cir. 1975). Claimant must demonstrate that he should not have discovered the alleged fraud within the period of limitations. *Schilleci v. Guaranty United Life Insurance Co.*, 367 F.Supp. 903 (N.D.Ala.1973). Unawareness of facts or law, alone, does not justify suspending the operation of the statute; and the claimant's indifference to the true facts of the case is not enough to toll the statute. *Morgan v. Koch*, 419 F.2d 993, 997 (7th Cir. 1969).

■ Thus, the statute of limitations began to run against Henley from (1) the time he acquired actual knowledge of the facts that comprise his cause of action, or (2) the time he should have acquired such knowledge through the exercise of reasonable diligence after being apprised of sufficient facts to put him on inquiry. *Long v. Abbot Mortgage Co.*, 459 F.Supp. 108 (D.Conn. 1978). Accordingly, in deciding when Henley knew or should have known of the essential facts which constitute his fraud claim, it must be determined when he was aware of any facts sufficient to put him on notice of the claim, thereby creating an obligation of diligence.

Plaintiffs have argued that Henley has been aware of all the facts, as such, which

---

**10.** SEC Rule 14a–9, 15 C.F.R. § 240.14a.

constitute the elements of his cause of action since the moment he received and read his proxy statement; and thus the statute of limitations barred his counterclaim one year thereafter. They assert that what Henley calls an unknown fact is in reality a novel and untested legal theory.[11] The plaintiffs insist that Henley was fully and accurately informed in the proxy statement as to (1) the terms of the merger agreement; (2) the alternatives available to shareholders under that agreement; and (3) the law under which the plaintiffs purported to proceed. Plaintiffs contend that if Henley desired to have bank stock and not holding company stock at the time of reorganization, as he contends, he was free then or at any time thereafter to authorize his attorneys to develop legal theories challenging the legitimacy of the reorganization; he cannot escape the statute of limitations six years later by simply recasting his legal theory concerning the reorganization into a question of fact in order to invoke the federal tolling doctrine. Accordingly, plaintiffs assert that ignorance of a legal theory, as distinguished from a fact, does not invoke the federal tolling principle.[12]

Although the Court finds this view of the case persuasive,[13] even if what Henley calls a fact is indeed a fact, the testimony and evidence introduced at trial conclusively demonstrated that he had sufficient notice thereof more than a year before this suit was filed.

The evidence in this case reveals a somewhat unique situation giving a peculiar insight into the state of Mr. Henley's knowledge as well as extensive documentation of the same. This arises out of Mr. Henley's involvement in a similar national bank reorganization and ensuing protracted litigation respecting that reorganization. The evidence is without dispute that some two years prior to the reorganization of The First National Bank of Birmingham, here complained of, Henley's Co-Trustee, the Birmingham Trust National Bank, accomplished a reorganization substantially similar in form to that subsequently adopted by The First National Bank. At that time the Trust held a substantial number of shares of BTNB common stock, and Henley acting on behalf of the Trust opposed the BTNB reorganization, dissented therefrom, and subsequently pursued on behalf of the Trust the appraisal remedies provided by the National Bank Act.

Henley acknowledged at trial that the procedures employed by BTNB in their reorganization were basically the same procedures employed by the plaintiffs in the FNB reorganization.[14] He further acknowledged that he recognized the similarities or identity of the procedures and realized that any information or knowledge he obtained regarding the legality or illegality of the BTNB merger would be applicable to The First National Bank reorganization.[15] In view of these admissions, Mr. Henley's activities with respect to the BTNB merger and the subsequent litigation concerning it take on increased importance in regard to the issues here presented and require a brief outline of Henley's involvement in the litigation against BTNB.

---

**11.** Henley's Memorandum in Opposition to Plaintiff's Motion for Summary Judgment says "what was really misrepresented was the *fact* that Henley had another *legal* alternative." (Henley's Memo., p. 7).

**12.** *See Hart v. First National Bank*, 373 F.2d 202 (5th Cir. 1967); *Goldstandt v. Bear, Stearns & Co.*, 522 F.2d 1265 (7th Cir. 1975); *Akron Presform Mold Co. v. McNeil Corp.*, 496 F.2d 230 (6th Cir. 1974); *Braunstein v. Laventhol & Horwath*, 433 F.Supp. 1077 (S.D.N.Y. 1977); *Getz v. Bruch*, 400 F.Supp. 1033 (E.D. Pa.1975). *Cf. Howard v. Sun Oil Co.*, 404 F.2d 596 (5th Cir. 1968).

**13.** Henley's argument in post-trial brief that "Henley's *theory* in this case is different from the ones advanced by Morris Sirote," p. 10, lends substantial support to plaintiffs' position that lack of knowledge of law, or the precise legal theory, not facts, is being relied upon to toll the statute.

**14.** Transcript pp. 15–16. A comparison of the proxy statements issued by the two banks, plaintiffs' Exh. 1, attachment B to Exh. 1, and plaintiffs' Exh. 1, Exh. 6, confirms the procedural identity of the two reorganizations.

**15.** Transcript pp. 32–34.

As stated, Henley, acting on behalf of the Trust, opposed and dissented from the BTNB reorganization plan. Subsequently, purporting to act in accordance with § 215a, BTNB arranged for an appraisal and public sale of the shares to which the Trust was entitled. Henley, believing that BTNB had not conducted the sale as required by § 215a and in a manner consistent with its fiduciary obligations to the Trust, contested the appraisal and sale. That controversy led BTNB to file a Petition for Instruction and Confirmation in the Circuit Court of Jefferson County, Alabama in October of 1971.[16] By answer and crossbill, filed in May of 1972 and amended in July 1972, Henley complained against BTNB, *inter alia*, that the appraisal rights provided by § 215a were not afforded the Trust in the BTNB reorganization and even alleged that BTNB had violated fiduciary duties to the Trust in not protecting its interests in respect to the FNB reorganization.[17]

Following a trial on the merits, a decree was rendered by the Circuit Court in favor of BTNB, which decree was subsequently reversed on appeal by the Supreme Court of Alabama, and the case was remanded to the Circuit Court. *Henley v. Birmingham Trust National Bank*, 295 Ala. 28, 322 So.2d 688 (1975). The Alabama Supreme Court ordered the Circuit Court on remand to appoint a temporary trustee to protect the Trust's interests on retrial. Pursuant to this direction, the Circuit Court appointed Jack Harrison as temporary trustee who employed attorney Morris Sirote to represent the Trust. On November 5, 1976, Sirote filed an amended and supplemental complaint in the *BTNB* litigation which asserted a number of grounds for relief against BTNB and its holding company including specific claims that the form of the BTNB reorganization was not authorized by § 215a and that the 1934 Securities Act had been violated by BTNB in not disclosing in its proxy material the lack of statutory authorization for the proposed procedures.[18]

In view of the acknowledgement by Mr. Henley of his recognition of the similarities between the BTNB and the FNB reorganizations, the claims of this amended and supplemental complaint of the temporary trustee would clearly constitute notice or knowledge to Henley of similar claims available against the FNB sufficient to start the clock running for statute of limitations purposes. There is, however, uncertainty in the testimony as to when Henley received a copy of such amended and supplemental complaint.[19]

Mr. Henley acknowledged, however, that he had met several times with Mr. Sirote prior to the filing of the amended and supplemental complaint to assist the temporary trustee's attorney in preparing for the retrial of the BTNB litigation. One such meeting occurred on October 8, 1976.[20] Mr. Sweeney confirmed attending this conference with Mr. Henley and identified plaintiffs' Exhibits 5 and 6 as the memorandum and draft complaint furnished by Mr. Sirote

---

16. Pls.Exh. 1, Exh. 1.

17. Pls.Exh. 1, Exhs. 2 & 3. One of Henley's principal positions regarding the deficiency of the appraisal procedure involved the proper stock to be sold at public auction pursuant to the requirements of § 215a. BTNB had first sold stock of the holding company. Henley contended that the statute which provided "The shares of stock of the receiving association which would have been delivered to such dissenting shareholders had they not requested payment shall be sold . . ." required the sale of bank stock. It is this very provision on which Henley now relies in claiming the option to retain Bank stock rather than holding company stock. See Henley's post-trial brief, p. 11.

18. See particularly page 24, ¶ 5, and page 28, ¶ 4, of Exhibit 4 to plaintiffs' Exhibit 1.

19. While Mr. Sweeney's time records reveal that on November 12, 1976 he recorded three hours for "Review and Analysis of Banks financial Statement with John Henley and Review of Complaint of Temporary Trustee (T.T.)", Mr. Henley's testimony was inconclusive as to when he first obtained a copy of the Amended and Supplemental Complaint as filed.

20. This meeting was described in Mr. Sirote's time records as "conference with Attorney General, John C. Henley and his attorney, review of memorandum and complaint: 4–½ hrs." Exh. 5 to Henley's Deposition.

to the participants in such conference. The Court finds that as of October 8, 1976 Mr. Henley had actual knowledge of the potential claims reflected in plaintiffs' Exhibits 5 and 6.[21] A review of those documents and particularly Mr. Henley's marginal notes on them can leave no doubt that he at that time had actual knowledge of potential claims that (1) the plan of merger was not authorized by § 215a of the National Bank Act,[22] (2) the proxy statement violated the federal securities laws,[23] and (3) the Trust thus had a claim of right to retain or regain national bank stock rather than stock of the holding company.[24]

The Court concludes that these exhibits and Henley's notes thereon affirmatively demonstrate that in October of 1976 he had actual knowledge of all the facts and legal theories necessary to assert the Federal Securities Act claim now made. Counsel for Henley candidly admits the substantial impact of these two documents on his client's case but valiantly argues that there is not a direct statement in either of them, as there is in the amended and supplemental complaint filed by the temporary trustee on November 5, 1976 in the BTNB case, that a stockholder of the old bank had the right to receive and retain new bank stock rather than accepting holding company stock or dissenting. Admitting that the distinction is not great, counsel relies upon the complexity of the banking laws as excusing Henley's perception of this precise claim. The difficulty with this position is that it ignores the knowledge necessary to start the clock running, *i. e.*, knowledge of facts which if followed up with diligence would lead to actual discovery of all details of ones claim. If plaintiffs' Exhibits 5 and 6 did not contain all the necessary information on which to base the current claim, they cer-

---

21. While Mr. Henley acknowledged receiving plaintiffs' Exhibits 5 and 6 prior to November 5, 1976 and acknowledged that all of the extensive handwritten notations in the margin thereof and underlining and starring of the text of both documents were done by him, he declined to acknowledge that he received them at the October 8, 1976 meeting. However, Mr. Henley did not deny that plaintiffs' Exhibits 5 and 6 were received by him at the October 8 meeting and all of the evidence points strongly to this time of receipt, particularly the notes at the top left hand corner of plaintiffs' Exhibit 6 coupled with Henley's testimony regarding his concerns from the meeting as confirmed in plaintiffs' Exhibit 7 dated October 14, 1976.

22. At page 2 of plaintiffs' Exhibit 5 is the following general note by Henley:

"Although the Bank expected the Holding Company to be the sole owner of all the stock of 'New Bank' [and the plan of merger is so drawn (*however unlawfully*) to ensure exactly that] the Act does not guarantee there would not be other owners of stock in the 'New Bank.'" (Emphasis added).

23. At page 12 of the second section of plaintiffs' Exhibit 6 a summary of these claims is stated as follows:

"Count III should be to seek restitution of the sale by the minority stockholder of his stock because the merger agreement, was invalid insofar as the triangular merger is concerned and insofar as the provision which requires the stockholders of the bank to exchange their stock for the stock of the holding company.

"Count IV could be for restitution because of the violations of the Alabama and Federal Securities Laws.

"Accordingly, the plaintiff is entitled to restitution of his stock . . . ."

Opposite this last statement is an asterisk and Henley's note, "All they have to do is issue the stock back."

That Mr. Henley recognized the significance of the Federal Security Act claim is well illustrated by his note on page 1 of the last section of Exhibit 6 that "If Security Act violated why can't we go into Federal Court. Can we file?"

At page 19 of the second section of plaintiffs' Exhibit 6 Mr. Henley underlined the following reference to § 14(a) of the 1934 Securities Act and S.E.C. Rule 14a–9:

"prohibiting solicitations containing any statement which is false or misleading with respect to any material fact or which omits to state any material fact in order to make the statements therein not false or misleading."

Opposite this statement is Mr. Henley's note, "Can keep Bank stock."

24. Among the numerous references to the right to retain or regain National Bank stock rather than holding company stock is the following underlined statement at page 11 of plaintiffs' Exhibit 5, "it would not have been obligatory upon minority stockholders to accept such tender, unless they so desired." Beside this is Mr. Henley's question, "If this is so, why can't the trust have its National Bank stock back which it did not wish to sell?"

tainly contained all that was necessary if properly followed up. While the evidence is far from conclusive that Henley did not have actual knowledge of the precise claims made in the Amended and Supplemental Complaint as filed on November 5, 1976, the evidence affords no inference that such claim, in the exercise of reasonable care and diligence could not have been discovered more than a year prior to the filing of this suit.[25]

In pretrial brief Henley's counsel urged that plaintiffs should be estopped from relying on the statute of limitations. However, there is no basis for estoppel. He acknowledges that there was no fiduciary relationship between Henley and the plaintiffs and there is no evidence of any misrepresentation regarding the statute of limitations or any other grounds for estoppel.

In a final effort to keep this cause alive, Henley contends that his cause of action is a counterclaim in the nature of a plea of recoupment; and, therefore, he contends that it may be asserted even if the statute of limitations has run. He recognizes and concedes that at common law a plea in recoupment cannot result in an affirmative recovery. However, to preserve this affirmative claim, he relies on an Alabama statute,[26] which is embodied in Alabama Rule of Civil Procedure 13(c), as authority for the proposition that his counterclaim is not barred by the statute of limitations.

■ Aside from the incongruous result to which such argument leads, *i. e.*, there could be no suit for a declaratory judgment that the statute of limitations has barred a defendant's claim,[27] Henley's reliance on the Alabama statute is clearly misplaced. Although Alabama law apparently would under some circumstances allow a counterclaimant an affirmative recovery after the statute has run, Henley makes no effort to show why the law of Alabama, which is in derogation of the common law principle, should be applied here. The contested issue in this case arises under federal question jurisdiction, involves exclusively federal law under the National Bank Act and the 1934 Securities Act, and thus does not involve any claim or right created by Alabama law. Although it is true that the Alabama one-year limitation period is borrowed in actions under the 1934 Securities Act, as indicated above, federal and not state law controls when the limitation period begins to run. *Azalea Meats v. Muscat, supra.*

Indulging all presumptions in favor of Henley, the conclusion is inescapable that more than a year prior to plaintiffs' filing this action for declaratory judgment[28] defendant had knowledge of sufficient facts to put him on notice of the Federal Security Act claim now asserted in his amended answer and counterclaim. The Court therefore holds that all claims asserted in Henley's counterclaim not heretofore withdrawn are barred by the statute of limitations.

---

**25.** Indeed, Mr. Henley's own communications with his attorneys in urging the prompt institution of this litigation, plaintiffs' Exhibits 8 and 9, indicate his recognition that November 8, 1976 and November 12, 1976 could well be the date from which discovery of his Security Act claims should date.

**26.** Ala.Code § 6–8–84 (1975).

**27.** See *Luckenback Steamship Co. v. United States*, 312 F.2d 545 (2nd Cir. 1963) for a discussion of the compatible purposes of statutes of limitations and actions to declare stale claims barred.

**28.** Even this dating is possibly overfavorable to Henley since his demand upon plaintiffs which precipitated this declaratory judgment action made no reference to the Federal Security Acts and the original answer contained no such claim. For the purpose of this opinion it is assumed that the claim asserted by amendment more than six months later relates back to the time of filing of the plaintiffs' original complaint.