**W. D. UPTON, Plaintiff,**

v.

**TRINIDAD PETROLEUM CORPORATION, a corporation, Charles D. Beard, Jr., an Individual, Defendants.**

Civ. A. No. 76–M–0262.

United States District Court, N. D. Alabama, S. D.

March 26, 1979.

332

J. Michael Rediker, Ritchie & Rediker, Birmingham, Ala., for plaintiff.

S. P. Keith, Jr., Birmingham, Ala., for defendants.

MEMORANDUM OPINION

McFADDEN, Chief Judge.

This cause was tried by the court without a jury. This memorandum opinion is being issued in lieu of findings of fact and conclusions of law, pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

Plaintiff seeks damages, both compensatory and punitive in connection with the purchase of an interest in a gas well which he claims violated the securities laws of the United States and the State of Alabama.

This court has subject matter jurisdiction under § 22 of the Securities Act of 1933, 15 U.S.C. § 77v, and § 27 of the Securities Act of 1934, 15 U.S.C. § 78aa. This court takes pendent jurisdiction over the claims brought under the laws of Alabama. *See United Mine Workers of America v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *O'Connell v. Economic Research Analysts, Inc.,* 499 F.2d 994, 996 (5th Cir. 1974).

Defendant Trinidad Petroleum Corporation, a Louisiana corporation located in Mountain Brook, Alabama and wholly owned by defendant, Charles D. Beard, its president, was engaged in the business of exploring and producing gas and oil wells during 1974, the year pertinent to the issues in this lawsuit. Defendant Beard acted as salesman for the corporation in the transactions relevant to this action. As the president and only stockholder, defendant Beard is a controlling person for defendant Trinidad.

On December 16, 1974 plaintiff W. D. Upton and Beard met at Trinidad's office, after several telephone conversations. There is a dispute about the details of the meeting, but agreement on the following:

A. Beard told Utpon that his company had drilled a producing natural gas well, Wallace Well Number One, in Sutton County, Texas, and that it would soon drill Wallace Well Number Two on the same tract of land. Beard said that the chances for Wallace Well Number Two being successful were excellent.

B. Beard failed to disclose to Upton:

(i) that in 1964 he and Trinidad had been permanently enjoined from selling unregistered securities. *Securities and Exchange Commission v. Southwest Production Corp., et al.,* unpublished order, C.A. 15105 (U.S.D.C., W.D.La., 20 November 1969);

(ii) the price of the turnkey drilling contract;

(iii) that the price of the turnkey drilling contract was substantially less than the amount of money being raised from investors;

(iv) that the administrative costs and general overhead costs of Trinidad that Beard had attributed to Wallace Well Number Two would be taken out of the money supplied by the investors;

(v) that through an affiliated company, Charles D. Beard & Associates, Beard was making a $3,000 profit on the assignment of the leasehold interest for the tract of land containing the Wallace Wells; and

(vi) his personal business history or a history of his past drilling efforts.

C. Beard offered to sell Upton a five percent interest in Wallace Well Number Two for $15,000.00, and Upton accepted the offer.

Defendant Beard admits selling interests in Wallace Well Number One to the following:

1. Edwin P. Alexander
2. Charles D. and Mary Sue Beard
3. Joseph M. Bishop
4. Rex Brown
5. Robert R. Crowe
6. L. R. Fleming
7. Clayton J. Jones
8. S. Palmer Keith
9. Joseph A. Mancini
10. Sadie Swing

In addition, he sold an interest of 15 percent to Charles Bech, an interest of 2 percent to Marie Bech, and an interest of 2 percent to Joseph Bech.

When these 14 people invested in Wallace Well Number One, each received an option to purchase an interest in Wallace Well

Number Two and were offered interests pursuant to these options. Since plaintiff also received an offer for an interest, there was a total of at least 15 offerees for Wallace Well Number Two. The mails and the telephone were used in making the offers for interests in Wallace Well Number Two. There was no registration under the state or federal securities laws of the interests in Wallace Well Number Two.

■ The gas well interests which are the subject of the suit are securities under both Federal and Alabama law. The Supreme Court has ruled that

> an investment contract for purposes of the Securities Act means a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party . . . .

*Securities and Exchange Commission v. W. J. Howey Co.,* 328 U.S. 293, 298–299, 66 S.Ct. 1100, 1103, 90 L.Ed. 1244 (1945). *Accord, Gallion v. Alabama Market Centers, Inc.,* 282 Ala. 679, 683, 213 So.2d 841 (1968). That test has clearly been met in this case.

Defendants did not require written signed statements of investment interest from the purchasers, and defendants did not place a restrictive legend on the documents evidencing the interests in Wallace Well Number Two.

Plaintiff has received no income from his investment in Wallace Well Number Two.

In the complaint, plaintiff tendered his interest in Wallace Well Number Two to defendants.

One of plaintiff's claims is that defendants violated section 5 of the Securities Act of 1933, 15 U.S.C. § 77e, by failing to register the securities involved in this action. Defendants have responded first that the one-year statute of limitations in section 13 of the Act, 15 U.S.C. § 77m, has run, and even if the statute of limitations were tolled, these securities were exempt from the registration requirements because they were issued through a private offering made pursuant to section 4(2) of the Act, 15

U.S.C. § 77d(2), and SEC Rule 146, 17 C.F.R. § 230.146.

■ This was not an exempt transaction under the federal securities law, but the one-year statute of limitations period seems to have run. The securities were offered and sold in December 1974. This action was filed on February 24, 1976. However, plaintiff claims that the running of the limitations period was tolled by defendants' fraudulent concealment and affirmative misrepresentation of material facts. Plaintiff relies primarily on *Glus v. Brooklyn Eastern District Terminal,* 359 U.S. 231, 79 S.Ct. 760, 3 L.Ed.2d 770 (1959), and *Houlihan v. Anderson-Stokes, Inc.,* 434 F.Supp. 1319 (D.D.C.1977).

In *Glus, supra,* the Supreme Court reversed a dismissal of an action brought under the Federal Employers' Liability Act. There, defendant had represented to plaintiff that he had seven years in which to bring his action when the statute only gave him three years. Even though plaintiff allowed the three-year period to run, the Supreme Court applied "the maxim that no man may take advantage of his own wrong . . . .", *Id.* at 232, 79 S.Ct. at 762, and permitted the action to proceed.

In *Houlihan, supra,* the court allowed plaintiffs to bring an action under section 12(1) of the Securities Act of 1933, 15 U.S.C. § 77*l*(1), even though the complaint was filed in April, 1975, about two and one-half years after the securities had been sold in November, 1972. However, there defendants had agreed with plaintiffs to extend the limitations period, and defendants had affirmatively represented at the time of the offer that the securities were not required to be registered.

■ In this case, defendants made no agreement with or representations to plaintiff about the statute of limitations period. The court is of the opinion that there is no basis for application of the federal tolling doctrine in this case.

Plaintiff also claims a violation of the registration requirements of the State of Alabama. In 1974 the Securities Act of

Alabama, Code of Alabama (1940), tit. 53 § 28 *et seq.*,[1] provided that

It is unlawful for any person to offer or sell any security in this state unless (1) it is registered under this chapter or (2) the security is exempt from registration under section 37, or the transaction is exempt under section 38.

Code of Alabama (1940), tit. 53, § 30.

The Act also provides that any person who

(1) sells or offers to sell a security in violation of any provision of this chapter

. . .

. . . is liable to the person buying the security from him who may sue either at law or in equity to recover the consideration paid for the security, together with interest at six per cent per year from the date of payment, court costs, and reasonable attorneys' fee, less the amount of any income received on the security, upon the tender of the security

. . .

Code of Alabama (1940), tit. 53, § 45(a).

■ Defendants claim that the securities involved in this action were exempt under the private offering exemption, Code of Alabama (1940), tit. 53, § 38(i), which eliminates the necessity of registration for

Any transaction pursuant to an offer directed by the offerer to not more than ten persons . . . in this state during any period of twelve consecutive months, whether or not the offerer or any of the offerees is then present in this state . . . .

Defendants contend that this section exempts all transactions which include less than ten offerees *who are residents of Alabama*. The court is of the opinion that the exemption applies only when the total number of offerees is no more than ten.

■ Thomas L. Krebs, Director of the Alabama Securities Commission, testified that it is the position of the Commission that the Code of Alabama (1940), tit. 53,

§ 38(i) exempts transactions only when the total number of offerees is no more than ten. So long as it is reasonable and consistent with the purposes of the Act, this position is entitled to deference. *See Central of Georgia Railroad Co. v. Occupational Safety and Health Review Commission,* 576 F.2d 620, 624 (5th Cir. 1978).

The Securities Act of Alabama, like almost all laws passed by the Alabama Legislature, has no published legislative history. However, the Alabama Legislature substantially adopted the Uniform Securities Act, 1 Blue Sky L.Rep. ¶ 4901 *et seq.,* and the general purpose of these so-called Blue Sky Laws is "for the general welfare and to protect the public from diversified methods of deceit and fraud in the sale of securities." *Id.,* at ¶ 1021.

Krebs, speaking as a representative of the Commission, and plaintiff contend that the purpose of the Securities Act of Alabama was to prevent Alabama from being used as a base for fraudulent securities activities as well as to protect residents of Alabama. In the opinion of the court, this contention is reasonable and should be accepted. Therefore, the limit of ten offerees in Code of Alabama (1940), tit. 53, § 38(i) applies to nonresidents and to residents of Alabama. *See Kreis v. Mates Investment Fund, Inc.,* 473 F.2d 1308, 1312 (8th Cir. 1973); *State v. Hayes,* 305 So.2d 819, 821 (Fla.App.1975).

Defendants argue such an interpretation creates an unconstitutional burden on interstate commerce. The Fifth Circuit has recently addressed this issue:

In *Pike v. Bruce Church, Inc.,* 1970, 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174, a unanimous Court adopted the following statement of the law:

Although the criteria for determining the validity of state statutes affecting interstate commerce have been variously stated, the general rule that emerges can be phrased as follows: where the

---

1. Since the claims in this suit arose prior to the adoption of the Code of Alabama (1975), all cites are to the Code of Alabama (1940). In the Code of Alabama (1975), the Securities Act of Alabama is found at § 8–6–1 *et seq.*

statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits. *Huron Cement Co. v. Detroit,* 362 U.S. 440, 443, 80 S.Ct. 813, 816, 4 L.Ed.2d 852, 856, 78 A.L.R.2d 1294. If a legitimate local purpose is found, then the question becomes one of degree. And the extent of the burden that will be tolerated will of course depend on the nature of the local intent involved, and on whether it could be promoted as well with a lesser impact on interstate activities.

*Accord, Raymond Motor Transportation, Inc. v. Rice,* 1978, 434 U.S. 429, 98 S.Ct. 787, 792–796, 54 L.Ed.2d 664; *A & P Tea Co. v. Cottrell,* 424 U.S. 366 at 371–72, 96 S.Ct. 923, 47 L.Ed.2d 55.

*Great Western United Corporation v. Kidwell,* 577 F.2d 1256, 1282 (5th Cir. 1978), *probable jurisdiction noted,* 47 U.S.L.W. 3463 (1979).

■ The Securities Act of Alabama, as interpreted by this court, effectuates a legitimate local public purpose and regulates even-handedly, treating residents and nonresidents in the same manner. Defendants have not even attempted to show that the Act imposes an excessive burden on interstate commerce. Therefore, the court is of the opinion that the interpretation of the Act made by the Alabama Securities Commission should be upheld and applied.

Furthermore, the Supreme Court has recently considered almost the same issue and decided that it did not create a substantial federal question. The Court of Civil Appeals of Texas decided that the Texas Securities Act applied to a transaction in which no purchaser was a resident of Texas and that the Act did not violate the commerce clause of the United States Constitution. Defendants appealed to the United States Supreme Court, and the appeal was dismissed for want of a substantial federal question. *Enntex Oil & Gas Co. v. Texas,* 560 S.W.2d 494 (1977), *appeal dismissed —* U.S. ——, 99 S.Ct. 445, 58 L.Ed.2d 419 (1978).

■ Since defendants offered the interests in Wallace Well Number Two to more than ten people and did not register with the Alabama Securities Commission, plaintiff is due to recover his $15,000.00 investment, six percent interest on that investment from December 16, 1974 until the date of this judgment, his court costs, and a reasonable attorney's fee. Code of Alabama (1940), tit. 53, § 45(a). Since defendant Beard is the controlling person of defendant Trinidad, they are liable jointly and severally. *Id.*

■ The court is also of the opinion that defendants have violated the registration requirements of the Alabama "Blue Sky" Law in at least one other way. One of the conditions of the private offering exemption to the registration requirements is that "no commission or other remuneration is paid or given directly or indirectly for soliciting any prospective buyer." Code of Alabama (1940), tit. 53, § 38(i)(2). *See also* Rule 38–1(I) of the Alabama Securities Commission. 1 Blue Sky Law Reporter ¶ 5613, at 539. Director Krebs testified that the amount of money raised from investors in excess of the cost of the turnkey drilling contract was a "commission or other remuneration" under section 38(i)(2). The court agrees with Krebs. *Accord, In the Matter of Petroleum Resource Development Corporation,* [Current Binder] CCH Blue Sky L.Rep. ¶ 71,434 (Oklahoma Securities Commission, 1976).

■ Plaintiff has also sued under §§ 10(b), 15(c), and 20(a) of the Securities Act of 1934, 15 U.S.C. §§ 78j(b), 78*o*(c), and 78t(a), and under SEC Rule 10b–5, 17 C.F.R. § 240.10b–5. The sale of these securities were clearly in violation of the antifraud provisions of the federal statutes and plaintiff is entitled to recover under those theories of law.

Rule 10b–5, 17 C.F.R. § 240.10b–5, provides that

It shall be unlawful for any person, directly or indirectly, by use of any means or instrumentality of interstate, commerce, or of the mails . . . to make any untrue statement, of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, . . . in connection with the purchase or sale of any security.

Defendant's failure to disclose either that he had been enjoined from selling unregistered securities or that the price of the turnkey drilling contract was substantially less than the amount of money being raised from investors constituted a material omission of fact which made defendant's statement, as a whole, misleading. As the Fifth Circuit has ruled, "a duty to speak the full truth arises when a defendant undertakes to say anything." *First Virginia Bookshares v. Benson,* 559 F.2d 1307, 1317 (5th Cir. 1977), *cert. denied,* 435 U.S. 952, 98 S.Ct. 1580, 55 L.Ed.2d 802 (1978). Plaintiff's credible testimony that he would not have bought the securities if defendant had disclosed these facts shows that there was reliance, and this court is of the opinion that the reliance was reasonable. *See id.,* at 1314. The omissions, especially that of the injunction, indicate scienter beyond mere negligence. *See Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976); *First Virginia Bookshares, supra.* The statement with the material omissions was obviously made in connection with the sale of a security.

■ Defendant has raised the statute of limitations as a defense to the 10b–5 claim. This court has recently decided that a one-year statute of limitations applies to 10b–5 claims which arise in Alabama. *First Federal Savings and Loan Association of Miami v. Mortgage Corporation of the South,* 467 F.Supp. 943, Civil Action No. 75–M–2317–S (N.D.Ala. 19 March 1979); *Alabama Bancorporation v. Henley,* 465 F.Supp. 648, Civil Action No. 77–L–1530–S (N.D.Ala. 21 February 1979). However,

the period of limitations runs from the date when the plaintiff discovered or in

the exercise of reasonable care, should have discovered the alleged wrongdoing. *Azalea Meats, Inc. v. Muscat,* 386 F.2d 5 (5th Cir. 1967); *Goldenberg v. Bache & Company,* 270 F.2d 675 (5th Cir. 1959); *Schilleci v. Guaranty Savings Life Insurance Co.,* 367 F.Supp. 903 (N.D.Ala.1973).

*First Federal Savings and Loan Association of Miami, supra,* at 953.

■ Plaintiff testified that his first knowledge of the injunction came when he read a newspaper article in early autumn of 1975. Plaintiff said that shortly thereafter, he called the Alabama Securities Commission, and in February 1976, much less than a year later, he filed this lawsuit. There is no evidence before the court that plaintiff should have discovered the existence of the injunction prior to autumn of 1975. Therefore, plaintiff's 10b–5 claim is not barred by the statute of limitations.

■ Nevertheless, § 28(a) of the 1934 Act, 15 U.S.C. § 78bb(a) permits plaintiff to recover only his actual damages through these claims. *Dupuy v. Dupuy,* 551 F.2d 1005, 1024 (5th Cir. 1977). Since the court has already decided that the Securities Act of Alabama entitles plaintiff to recover his actual damages, plus attorney's fees, there can be no specific recovery under this aspect of the case.

■ Finally, plaintiff has requested punitive damages for fraud under the common law and statutory law of Alabama. The court is of the opinion that plaintiff has not shown that he is entitled to punitive damages, as plaintiff has effectively admitted this in his *Post Trial Memorandum.*

Judgment will be entered accordingly after the determination of the issue of attorneys' fees, which will be the subject of an additional hearing if necessary.