**DUNKIRK TRUST COMPANY,**
Appellant,

v.

**Nicholas L. SCHMITT, Trustee of the Estates of Aubrey C. Baldwin and Henrietta D. Baldwin, Appellee.**

Nos. 311–313, Dockets 28050–28052.

United States Court of Appeals
Second Circuit.

Argued April 11, 1963.

Decided May 1, 1963.

Mark N. Turner, of Vaughan, Brown, Kelly, Turner & Symons, Buffalo, N. Y. (Glenn W. Woodin, of Woodin & Woodin, Dunkirk, N. Y. on the brief), for appellant, Dunkirk Trust Co.

William J. O'Connor, Jr., Buffalo, N. Y. (Joseph J. Ricotta, Dunkirk, N. Y. on the brief), for appellee Nicholas L. Schmitt, trustee of the estates of Aubrey C. Baldwin and Henrietta D. Baldwin.

Before MOORE, FRIENDLY and HAYS, Circuit Judges.

HAYS, Circuit Judge.

Dunkirk Trust Company (hereinafter "the bank") appeals from so much of an order of the United States District Court for the Western District of New York as affirmed an order of the referee in bankruptcy denying appellant's claim as a secured creditor (11 U.S.C. § 1 (28)) of the

estates of Aubrey C. Baldwin and Henrietta D. Baldwin, bankrupts. We affirm the determination of the district court.

The bank's claim to be a secured creditor of the bankrupts is based upon the following:

Aubrey C. Baldwin was president and a principal stockholder of Baldwin Motors, Inc. which is also a bankrupt.[1] At the time of its bankruptcy Baldwin Motors was indebted to the bank in the amount of $27,807.09 on a number of notes and on two checks returned because of insufficient funds. These obligations were all incurred in 1961.

In 1956 the Baldwins gave the bank a mortgage to secure a loan of $20,000 for the erection of a residence. This mortgage contained the following clause:

"This mortgage and accompanying bond shall also be considered as collateral and continuing security for any and all present and future indebtedness, including renewals and substitutions thereof, on the part of said mortgagors to Dunkirk Trust Company, not to exceed at any one time the amount of the above indebtedness".

By the time of their bankruptcy the Baldwins had repaid $12,800 of the mortgage loan, leaving an unpaid balance of $7,200. This remaining balance, concededly a secured claim against the bankrupts, was paid to the bank when the residence on which the mortgage was given was sold by the referee in bankruptcy.

In 1959 Baldwin Motors, Inc. was indebted to the bank on certain notes and mortgages. On April 10, 1959, the corporation paid its mortgage indebtedness in full and part of the indebtedness on its notes. Obligations represented by notes totalling $7,255.27 remained unpaid. On the same date Mr. and Mrs. Baldwin executed the following instrument:

"GUARANTY OF PAYMENT OF NOTES AND RENEWALS THEREOF

"Know all men that whereas DUNKIRK TRUST COMPANY of the City of Dunkirk, New York, at our special instance and request, has agreed to extend credit to BALDWIN MOTORS, INC., a domestic corporation having its principal office in the City of Dunkirk, Chautauqua County, New York,

"NOW THEREFORE WE AUBREY C. BALDWIN and HENRIETTA D. BALDWIN both of Fredonia, New York, in consideration of ONE DOLLAR to us in hand paid, the receipt of which is hereby acknowledged, hereby covenant and agree with the said DUNKIRK TRUST COMPANY, its sucessors and assigns, to guaranty, and we hereby do guaranty the full and prompt payment of all of said obligations of said BALDWIN MOTORS, INC. to said DUNKIRK TRUST COMPANY as maker, endorser or otherwise and of any and all renewals thereof or of any of them or substitutions therefor when the same shall become due and payable, until all of the said obligations with interest thereon and any and all renewals thereof, are fully paid and discharged.

"IN WITNESS WHEREOF, we have hereunto set our hands and seals in the City of Dunkirk, New York this 10th day of April, 1959.

"AUBREY C. BALDWIN [L.S.]
"HENRIETTA D. BALDWIN [L.S.]"

The notes of the corporation outstanding at the time of the execution of the guaranty were paid in full prior to the date of the corporation's bankruptcy.

The bank argues that the guaranty executed by the Baldwins in 1959 extended not only to the corporate indebtedness then outstanding but also to the obligations which the corporation subsequently incurred, amounting, as we have said, to $27,807.09 at the time of the corporation's bankruptcy. The bank then further maintains that this obligation of the Baldwins is secured to the extent of $12,800 by the mortgage given in 1956. In short the bank argues that the Baldwins'

---

1. The estate of the corporate bankrupt is not involved in this appeal.

guaranty covers the corporation's present indebtedness, and that the mortgage covers the guaranty. It must, of course, establish both propositions in order to prevail.

The referee rejected both contentions and disallowed the claim. The district court affirmed the referee's order on the ground that the Baldwins' guaranty did not extend to the subsequently incurred corporate indebtedness here in dispute. We agree with the district court and therefore find it unnecessary to consider the applicability of the collateral clause in the mortgage.

■■ In construing the guaranty we are guided by the view of the New York courts that the obligations of a guarantor should be strictly construed, Wesselman v. Engel Co., 309 N.Y. 27, 127 N.E. 2d 736 (1955),[2] and more particularly that "unless the terms of the guaranty clearly import a continuing liability, it will be held limited to the transaction for which it was given." Trimline Window Frame, Inc. v. Rural New Yorker, Inc., 8 Misc.2d 645, 647, 168 N.Y.S.2d 170, 173 (Sup.Ct. Nassau County 1957); Schlem v. Jesaitis, 37 N.Y.S.2d 943, 945 (Sup.Ct. N.Y. County 1942).

Looking first to the situation which led to the execution of the guaranty, we find that until April 10, 1959, the corporation's obligations to the bank were partially secured by a number of mortgages on the corporate real estate. On April 10, 1959, the corporation's mortgage indebtedness was paid in full, but note obligations to the bank, totaling $7,255.27, remained unpaid and unsecured. It is undisputed that the guaranty was intended to replace the paid-up corporate mortgage which until then had secured the corporate debts. There is nothing in the circumstances of its execution to indicate that it was intended to serve also the purpose of securing obligations which the corporation might incur in the future.[3]

Moreover, the language of the guaranty reflects an intent to cover outstanding obligations rather than future obligations. The instrument recites that the bank "has agreed to extend credit" and goes on to guaranty the payment "of said obligations." Parol evidence was properly admitted on the question of the amount of credit which the bank had "agreed to extend," and its vice-president testified that the bank was in no way committed to make any future loans to the corporation. The recitation of the bank's agreement to extend credit could thus only have referred to existing loans, and the Baldwins' guaranty of payment of "said obligations" must also have referred to obligations which had already been incurred when the guaranty was executed.

The title of the instrument, "guaranty of payments of notes and renewals thereof,"[4] lends further support to this conclusion. There was no need for specific reference to "renewals" if *all* future notes were intended to come within the instrument's coverage.

■ We conclude, therefore, that the guaranty extended only to the indebtedness of the corporation which existed at the time of the execution of guaranty and that the indebtedness subsequently incurred is not under that instrument a proper claim against the estates of the bankrupts.

Affirmed.

2. The contrary approach taken by the Court of Appeals in Rindge v. Judson, 24 N.Y. 64 (1861) has apparently been rejected by the more recent decisions.

3. The district court was not required to credit the self-serving testimony of the bank's vice-president that the guaranty extended as well to "any future indebtedness" of the corporation.

4. Appellant does not contend that the obligations incurred by Baldwin Motors, Inc. after the date of the guaranty constituted "renewals" or "substitutions" of the earlier notes.