Sidney PINES, Plaintiff-Appellant,

v.

WARNACO, INC., Defendant-Appellee.

No. 82–7084.

United States Court of Appeals, Eleventh Circuit.

June 9, 1983.

Alton B. Parker, Jr., Birmingham, Ala., for plaintiff-appellant.

N. Lee Cooper, A. Inge Selden, III, Birmingham, Ala., for defendant-appellee.

Before TJOFLAT, HILL and JOHNSON, Circuit Judges.

JOHNSON, Circuit Judge:

Plaintiff Sidney Pines worked for Weiss Brothers Stores, Inc. for 27 years before retiring in 1967. Pines was not covered by a funded pension plan at the time of his retirement, but he had a vested right in and was paid a monthly retirement benefit of $650.00 by Weiss Brothers. On November 25, 1968, the shareholders of Weiss Brothers changed the name of the company to Gus Mayer Stores, Inc. (Gus Mayer).

On September 30, 1969, Gus Mayer was merged into Gusco Clothing Stores, Inc., a wholly owned shell corporation of the defendant, Warnaco, Inc.[1] Upon effectuation of the merger, Gus Mayer ceased to exist and Gusco was the surviving corporation. Gusco's name was immediately changed to Gus Mayer Stores, Inc. (Gus Mayer II). The Agreement of Merger, dated July 21, 1969, was executed in Bridgeport, Connecticut, on September 25, 1969. Attached to the Agreement of Merger and central to this litigation is a Guaranty Agreement which provides:

> The undersigned, Warnaco, Inc., hereby (a) confirms the accuracy of the representations and warranties of Gusco Clothing Stores, Inc., a Delaware corporation (referred to in the within Agreement of Merger and hereinafter as "Warnaco Subsidiary"), contained in the within Agreement of Merger; (b) agrees to perform or cause to be performed all of the obligations and agreements of Warnaco, Inc. and Warnaco Subsidiary thereunder, and (c) agrees to take all action on its part required to be taken in order to permit the fulfillment by Warnaco Subsidiary of all said obligations and agree-

---

1. Warnaco, Inc., a Delaware corporation, has its principal place of business in Connecticut.

ments on the terms and conditions contained in said Agreement of Merger.[2]

Under the terms of the merger agreement, the Surviving Corporation assumed all of Gus Mayer's debts, liabilities and duties, including responsibility for the payment of Sidney Pines' unfunded pension. Gus Mayer II paid Pines $650.00 per month

2. The preface to the Agreement of Merger provides, in pertinent part:

NOW, THEREFORE, in consideration of the premises and the mutual agreements, provisions and covenants herein contained, the parties hereto agree in accordance with the General Corporation Law of the State of Delaware that Warnaco Subsidiary and Mayer shall be, at the Effective Date (as defined herein), merged into a single corporation ·existing under the laws of the State· of Delaware, to wit, Warnaco Subsidiary, one of the Constituent Corporations, which shall be the surviving corporation (such corporation in its capacity as such surviving corporation being hereafter sometimes called the "Surviving Corporation"), and the parties hereto adopt and agree to the following agreements, terms and conditions relating to said merger and the mode of carrying the same into effect.

The Agreement further provides, in pertinent part:

I. NAME OF SURVIVING CORPORATION, CERTIFICATE OF INCORPORATION AND BY–LAWS

1.1. *Name of Surviving Corporation.* The corporation which shall survive the merger is Warnaco Subsidiary, a Delaware corporation. The name of the Surviving Corporation shall upon the filing of this Agreement be changed to "Gus Mayer Stores, Inc."

....

II. STATUS AND CONVERSION OF SECURITIES

....

2.2. *Assumption of Mayer Options.* Mayer represents that it has established a Stock Option Incentive Plan (the "Option Plan"), approved by its stockholders in 1965, under which options for 9,500 shares of Mayer Common Stock are outstanding to Mayer employees. On the Effective Date, the Surviving Corporation shall cause Warnaco to assume each option ("Mayer Stock Option") outstanding on the Effective Date granted pursuant to the Option Plan, subject only to the approval of the stockholders of Warnaco at or before its 1970 Annual Meeting in accordance with Section 33–344 of the Connecticut Stock Corporation Act.... [N]otwithstanding any other provisions of the Mayer Stock Options to the contrary, such options shall not be exercisable prior to the 1970 Annual Meeting of Warnaco. Warnaco Subsidiary will cause Warnaco to (x) present to its stockholders at the 1970 Annual Meeting a proposal to approve the assumption of the Mayer Stock Options, and (y) recommend the adoption of such proposal. If the stockholders of Warnaco do not approve the assumption of the Mayer Stock Options at or prior to their 1970 Annual Meeting, the Mayer Stock Options shall terminate and be of no further force and effect, and Warnaco Subsidiary shall pay within 30 days after said meeting to each holder of a Mayer Stock Option an amount in cash value equal to $8 for each share of Mayer Common Stock represented by such Option.

....

IV. CERTAIN EFFECTS OF MERGER

When the merger becomes effective, the separate existence of Mayer shall cease, Mayer shall be merged into Warnaco Subsidiary and the Surviving Corporation, without further action, shall succeed to and shall possess and enjoy all the rights, privileges, powers, and franchises as well of a public as of a private nature, and be subject to all the restrictions, disabilities, and duties of Mayer ... provided, however, that all rights of creditors and all liens upon the property of Mayer shall be preserved unimpaired, and all debts, liabilities, and duties of Mayer shall thenceforth attach to the Surviving Corporation, and may be enforced against it to the same extent as if they had been incurred or contracted by it and the Surviving Corporation shall thenceforth be responsible and liable for all the liabilities, obligations and penalties of Mayer under existing leases and guaranties of leases....

....

VI. REPRESENTATIONS AND WARRANTIES

6.1. *Representations and Warranties of Mayer.* Mayer represents and warrants to Warnaco Subsidiary as follows:

(i) *List of Documents.* Except as waived in writing by Warnaco Subsidiary, Mayer has delivered to Warnaco Subsidiary a list of the items set forth in (1), (2), (3), (4), and (5) below, and Mayer will deliver to Warnaco Subsidiary, not later than the 10th day preceding the Effective Date, a list of the items in (6), (7), and (8) below, in each case certified by an officer of Mayer to be correct and complete:

....

(7) the names of all pensioned employees of Mayer and its subsidiaries whose pensions are unfunded and are not paid pursuant to any formalized pension arrangements of Mayer or of any subsidiary, their ages, and their current annual unfunded pension rates; ...

from September 30, 1969, until December 30, 1972. About that time Pines received a letter dated December 27, 1972, which read as follows:

Dear Mr. Pines:

The Company has adopted the Warnaco Employee Retirement Plan for its employees, effective January 1, 1973.

The monthly pension of $650.00 which you have been receiving from Gus Mayer Stores, Inc. will continue to be paid. However, as of January, 1973, the checks will be paid from the Connecticut National Bank, Bridgeport, Connecticut, the trustee of the Warnaco Trust.

Your January check will be issued from Connecticut National Bank early in the month, as will all future payments. . . .

Pines received checks from the Connecticut National Bank from January 1973 through mid-1974. On April 12, 1974, Warnaco sold all outstanding and issued stock of Gus Mayer II to DAC Investment Company, Inc. In September 1974, after the sale of Gus Mayer II, Pines began to receive his retirement benefits from the Union Planters National Bank of Memphis, Tennessee. Gus Mayer II went into receivership on March 18, 1975, and on June 30, 1975, the pension plan from which Pines was receiving benefits was terminated. The assets and liabilities of this pension plan were subsequently transferred to the Pension Benefit Guaranty Corporation which paid Pines 40% of his pension benefits from July 1, 1975, until November 1, 1977. At that time Pines' pension benefits were terminated because, according to the Pension Benefit Guaranty Corporation, Pines had been improperly included as a participant in Warnaco's pension plan.

On September 5, 1980, Pines filed this action against Warnaco in the Northern District of Alabama under 28 U.S.C.A. § 1332 for breach of contract, breach of fiduciary duty, promissory estoppel and fraud. A stipulation of facts, affidavits, depositions and exhibits were filed together with cross-motions for summary judgment. The district court granted summary judgment for Warnaco as to all claims. On appeal Pines argues that: (1) in executing the Guaranty and Agreement of Merger Warnaco guaranteed the continuing liabilities of the Surviving Corporation, including its obligation to pay Pines' pension; (2) Warnaco breached its fiduciary obligations to Pines under its pension plan; (3) Warnaco fraudulently concealed certain aspects of its pension arrangements; and (4) Warnaco is liable under a theory of promissory estoppel because of the December 27, 1972, letter sent to Pines.

Under the terms of the Agreement of Merger the "Surviving Corporation" assumed the obligation of making retirement payments to Pines. The question is whether Warnaco guaranteed performance of the continuing obligations of the Surviving Corporation. The district court found that Warnaco was entitled to summary judgment because it found "nothing in either the Merger Agreement or Guaranty whereby Warnaco directly or indirectly undertook to perform the obligations of the Surviving Corporation." We hold that summary judgment was improper because the Guaranty, when read together with the Agreement of Merger, is ambiguous with respect to the intentions of the contracting parties.[3] *See Monroe Ready Mix Concrete, Inc. v. Westcor Development Corp.,* 183 Conn. 348, 439 A.2d 362, 363 (Conn.1981); 4 Williston on Contracts § 616 (3d ed. 1964).

Warnaco Subsidiary and the Surviving Corporation were the same corporation. It would therefore have been clearly erroneous for the district court to have found that they were separate corporate entities, and

---

3. Alabama's choice of law rule provides that the law of the state wherein the contract is executed, in this case Connecticut, governs interpretation of the contract. *Harrison v. Insurance Company of North America,* 294 Ala. 387, 318 So.2d 253, 257 (Ala.1975); *Furst & Thomas v. Sandlin,* 208 Ala. 490, 94 So. 740 (Ala.1922).

Under Connecticut law, if a written contract refers to another with an intent to incorporate terms, as in this case, the two may be interpreted together. *Batter Building Materials Co. v. Kirschner,* 142 Conn. 1, 7, 110 A.2d 464 (1954).

we do not think the court so held. The district court's citation of authorities [4] indicates that it found, as a matter of contract interpretation, that Warnaco guaranteed only the obligations specifically assigned by the merger agreement to Warnaco Subsidiary in its pre-merger capacity. Warnaco states in the Guaranty that it:

> (b) agrees to perform or cause to be performed all of the obligations and agreements of Warnaco Inc. and Warnaco Subsidiary thereunder, and (c) agrees to take all action on its part required to permit the fulfillment by Warnaco Subsidiary of all said obligations and agreements on the terms and conditions contained in said Agreement of Merger.

The district court apparently found and Warnaco contends that, for purposes of the Guaranty and Agreement of Merger, the term "Warnaco Subsidiary" is used in conjunction with separate and distinct obligations from those of the "Surviving Corporation." Warnaco points out that the Guaranty does not mention the Surviving Corporation and asserts that the Agreement of Merger clearly and consistently distinguishes between Warnaco Subsidiary, the corporation in its pre-merger capacity, and the Surviving Corporation, the corporation in its post-merger capacity.

If the Agreement of Merger, by its terms, distinguishes between Warnaco Subsidiary and the Surviving Corporation, that distinction is neither clear nor consistent. The preface to the Agreement provides that:

> Warnaco Subsidiary and Mayer shall be ... merged into a single corporation existing under the laws of the State of Delaware, to wit, Warnaco Subsidiary, one of the Constituent Corporations, which shall be the surviving corporation (such corporation in its capacity as such surviving corporation being hereafter *sometimes* called the "Surviving Corporation").... (Emphasis added.)

If the Agreement meant to draw a definite distinction between the Surviving Corpora-

tion and Warnaco Subsidiary, it could have referred to the surviving corporation exclusively as the Surviving Corporation rather than *sometimes* referring to it as such. The absence of a clear-cut distinction is most apparent in paragraph 2.2. of the Agreement, which at one point provides that: "On the Effective Date, the Surviving Corporation shall cause Warnaco to assume each option ('Mayer Stock Option') outstanding on the Effective Date granted pursuant to the Option Plan, subject only to the approval of the stockholders of Warnaco at or before its 1970 Annual Meeting...." The paragraph further states that: "Warnaco Subsidiary will cause Warnaco to (x) present to its stockholders at the 1970 Annual Meeting a proposal to approve the assumption of the Mayer Stock Options, and (y) recommend the adoption of such proposal." Since the 1970 annual meeting was to take place after the effective date of the merger it is clear that the term "Warnaco Subsidiary" was used to refer to the Surviving Corporation.

■ Warnaco argues, citing *Dunkirk Trust Company v. Schmitt, supra,* 316 F.2d at 539, that, unless the terms of the guaranty clearly import a continuing liability, it should be held limited to the transaction for which it was given—the merger. Although *Dunkirk* construes New York law, Warnaco asserts that the principle of construction it sets forth should control this case. On the contrary, Connecticut law, which is controlling, has no such rule of construction. Connecticut courts have often stated that the words of a contract, even those of a continuing guaranty, are to be taken as strongly against the drafter as the sense of them will admit. *Saphir v. Neustadt,* 177 Conn. 191, 204, 413 A.2d 843 (1979); *Rapelye v. Bailey,* 5 Conn. 149, 151 (1823).

We disagree with Warnaco's assertion that the plain language of the Agreement of Merger and Guaranty expresses an intention to limit Warnaco's obligations to those necessary to effectuate the merger. Be-

---

**4.** *E.g., United States v. Outriggers, Inc.,* 549 F.2d 337 (5th Cir.1977); *Dunkirk Trust Compa-*      *ny v. Schmitt,* 316 F.2d 537 (2d Cir.1963).

cause the intent of the parties is unclear, further factual determinations are necessary and summary judgment was improper. See *McGraw Edison Credit Corp. v. Motorola, Inc.,* 579 F.2d 885, 886 (5th Cir.1978); *Monroe Ready Mix Concrete, supra,* 439 A.2d at 363; *Bead Chain Mfg. Co. v. Saxton Products, Inc.,* 183 Conn. 266, 439 A.2d 314, 319 (Conn.1981).

Summary judgment was proper for the remainder of Pines' claims. Pines' claim for breach of fiduciary duty arose, at the latest, on November 1, 1977, when all his pension payments were terminated. The district court correctly determined that Pines' claim was *ex delicto* and therefore barred by the one-year statute of limitations contained in Ala.Code § 6–2–39 (1975). *See Jefferson County v. Reach,* 368 So.2d 250, 252 (Ala.1978) ("[I]f the wrong springs from a breach of a duty either growing out of the relationship of the parties, or imposed by law, the claim is *ex delicto.*"). The district court was also correct in finding that Pines' claim of fraud was time-barred by the one-year statute of limitations set out in Ala.Code § 6–2–3 (1975). Under Alabama law fraud is deemed to have been discovered when it ought to have been discovered. *Sexton v. Liberty National,* 405 So.2d 18, 21 (Ala. 1981). When Pines' benefits were terminated in November 1977, Pines was in possession of facts that would have led a prudent person to make further inquiry as to the possibility of fraud. *See id.* Although Pines argues that there was a factual dispute whether he should have discovered the fraud more than a year before filing suit, mere allegations cannot defeat summary judgment. *SEC v. Spence & Green Chemical Co.,* 612 F.2d 896, 900 (5th Cir.1980), *cert. denied,* 449 U.S. 1082, 101 S.Ct. 866, 66 L.Ed.2d 806 (1981). And Pines can point to no evidence supporting his allegation that he was prevented from obtaining information by the fiduciary nature of Warnaco's relationship to him.

Finally, Pines cannot prevail on his claim of promissory estoppel because he did not rely to his detriment on the promise contained in the December 27, 1972, letter. *Cf. Ames v. Pardue,* 389 So.2d 927, 931 (Ala.1980) (fraud). For an action of promissory estoppel one must show that the promise induced "action or forbearance of a definite and substantial character." *Bush v. Bush,* 278 Ala. 244, 177 So.2d 568, 570 (Ala. 1964). Although Pines argues that he refrained from exercising his legal rights against Gus Mayer II, any legal action at the time would have been fruitless. *See Soar v. National Football League Players Assoc.,* 438 F.Supp. 337, 345 (D.R.I.1975), *aff'd,* 550 F.2d 1287 (1st Cir.1977).

AFFIRMED IN PART, REVERSED IN PART AND REMANDED.